## No. 11,971.

### NEAL v. WILSON COUNTY BANK.

Decided December 27, 1927.

Action on promissory notes. Judgment for plaintiff.

*Affirmed.*

*On Application for Supersedeas.*

1. BILLS AND NOTES—*Promissory Note—Notice of Infirmity.* To constitute notice of an infirmity in a promissory note, the person to whom it is negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

2.    *Promissory Note—Consideration.*  A promissory note which shows on its face that it is given for value, imports consideration.

3.    EVIDENCE—*Suspicions.*  Mere suspicions and surmises are not · evidence.

4.    VERDICT—*Directed.*  In an action on a promissory note, if a verdict for defendant would have to be set aside, it was proper to direct a verdict for plaintiff.

5.    TRIAL—*Directed Verdict.*  Where the facts in a case are such that reasonable men could draw but one inference from them, the question becomes one of law for the court and a verdict should be directed in accordance with the facts.

6.    APPEAL AND ERROR—*Harmless Error—Rejection of Evidence.*  Where excluded testimony would not have affected the result of a trial if admitted, its exclusion does not constitute prejudicial error.

*Error to the District Court of Baca County, Hon. A. F. Hollenbeck, Judge.*

MR. W. B. GORDON, Mr. A. C. GORDON, Mr. D. G. REYNOLDS, for plaintiff in error.

Messrs. TODD & UNDERWOOD, for defendant in error.

*Department Two.*

MR. JUSTICE ADAMS delivered the opinion of the court.

WILSON County Bank of Fredonia, Kansas, was plaintiff and Neal was defendant in the district court; they are so referred to hereafter.

The action was on two promissory notes and the case was tried to a jury. At the close of defendant's evidence, the court granted plaintiff's motion for a directed verdict, and judgment was so entered. Defendant brings the case here for review and asks for a supersedeas.

The main question is, was the court right in directing a verdict? All else is subsidiary to this.

Defendant admits that he signed the notes, and does not deny that he has not paid them. His defense is that they were delivered on certain conditions to the payee, one C. E. Hayhurst, and that the conditions were violated, that they were acquired by false representations, that there was no consideration, and that plaintiff took the notes with knowledge of their infirmities. Plaintiff denied these defenses, and claimed that it acquired the notes before maturity, for value, and in due course.

Hayhurst and another man named Ball signed a negotiable promissory note for $10,000 to Wilson County Bank, and Hayhurst, or Hayhurst and Ball, pledged the Neal notes and other notes to the above bank as collateral security. The notes were thus held when the suit was brought; nothing had been paid on the Neal notes, and an amount greatly in excess of the Neal paper was then due on the $10,000 principal note. Defendant's notes were renewals of notes originally made payable to the Altoona State Bank, of Altoona, Kansas, of which Hayhurst was president. Defendant was a stockholder in an oil company, drilling in Kansas, which company Hayhurst was managing or looking after. Defendant claims that he signed the original or renewal notes with the understanding that they were not to be used or delivered unless the well was completed, and that it was not completed. Somewhat at variance with this, is an affidavit made by defendant in a matter preliminary to the trial, wherein he declared, among other things, that his notes were delivered to Hayhurst to be used as "accommodation paper," to raise money to guarantee the completion of the well.

1. We have examined the entire transcript, the exhibits and briefs, and discover no escape from the affirmance of the judgment. Defendant cannot avoid liability even if it be conceded that there was a breach of contract between him and Hayhurst, the original holder of the notes, for plaintiff bank proved that it was a

holder in due course, and that it acquired the notes for value long before maturity. There was no evidence that Wilson County Bank knew of any infirmity in the notes, until after they had acquired them for value. A good deal is said about Hayhurst's knowledge being imputed to Altoona State Bank, of which he was president, but be that as it may, it does not affect plaintiff without being further connected, even if Hayhurst and the Altoona bank were one and the same.

2. Plaintiff was a holder in due course as defined in § 3869, C. L. 1921. And § 3873, C. L. 1921 provides: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Followed in *Hukill v. McGinnis,* 70 Colo. 455, 202 Pac. 110.

3. The point most strenuously urged by counsel for defendant is that plaintiff did not pay, or may not have paid value for its $10,000 principal note, but the proof is clear and convincing that it did. Hayhurst's and Ball's note in that amount to plaintiff is in evidence; it shows on its face that it is for value, and such note itself imports consideration. Plaintiff's $10,000 cashier's check, payable to Hayhurst, and endorsed by him, stamped paid, and which went through three Kansas banks, is also in evidence. There is nothing to show that the check, or Hayhurst's signature on the back of it, or the rubber stamp endorsements of the other banks, nor any documents in evidence are forgeries. The cashier of the plaintiff bank testified at the trial, corroborated the documentary evidence, and testified to other facts. One of counsel for defendant urge strongly that he personally made trips to Fredonia, Kansas, to examine the books of the bank, and that the cancelled check was not then shown him, but the cashier on the witness stand, frankly and fully accounted for the failure, and he was

not contradicted. Counsel for defendant point to matters pertaining to the cashier's check, and attempt to discredit it, but we regard such matters as immaterial to the question in dispute; the cashier was not asked about them, there was no alteration of the instrument, and its admission is not assigned as error. Mere suspicions and surmises are not evidence. *Hukill v. McGinnis, supra.*

4. There was not sufficient evidence before the jury to contradict plaintiff's testimony that it was a holder in due course. Such being the case, the directed verdict was right. In *Miller v. Farmers Bank and Trust Co.,* 82 Colo. 373, 260 Pac. 112, we held that where the evidence is such that a verdict for plaintiff ought to be set aside, the court should direct a verdict for defendant. The converse is true under the facts of the instant case; a verdict for defendant would have to be set aside.

5. *Arps v. City and County of Denver,* 82 Colo. 189, 257 Pac. 1094, and other cases on the subject of directed verdicts are cited, but we did not say there, and have never said, that a directed verdict is not permissible under any circumstances. It may be the duty of the court to take such a step, and it was so here. The facts in this case were such that reasonable men could draw but one inference from them. It became a matter of law for the court. "Disputed facts" as applied to this case mean disputes in the evidence, not in the briefs.

6. Other errors are assigned but not argued, as to the rejection of testimony, but they do not touch upon the holder in due course feature, and even if the witnesses had testified as defendant says, it would not have affected the result, so there was no error. The same may be said as to other assignments.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE CAMPBELL and MR. JUSTICE BUTLER concur.