No. 12,139.

Stewart *v.* Public Industrial Bank.

Decided April 29, 1929. Rehearing denied May 27, 1929.

Mr. PERRY D. ROSE, for plaintiff in error.

No appearance for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

W. H. STEWART seeks the reversal of a judgment in favor of Public Industrial Bank, rendered in an action on Stewart's promissory note acquired by the bank from the payee before maturity. It is conceded that if the payee had sued, Stewart would have had a defense to the action. It is claimed that the defense is good as against the bank also for the reason that the bank had notice, actual or constructive, of the facts constituting the de-

fense, and for the further reason that the note.is nonnegotiable. Of these in their order.

1. Stewart bought from A. F. Joseph an automobile, and gave his note in part payment. The transaction respecting the sale was conducted by Milton Kline, who represented that he was Joseph's agent and that Joseph owned the automobile. Kline had been adjudged a bankrupt. It later appeared that the automobile was not owned by Joseph, but belonged to the estate of the bankrupt, Kline. It was taken away from Stewart by the trustee of the bankrupt's estate. Kline offered to sell to Hayutin, the president of the bank, the Stewart note, which was secured by a chattel mortgage on the car. Hayutin objected that the chattel mortgage gave the wrong county as Stewart's place of residence, and had the bookkeeper draw a new note and a new chattel mortgage, and go with Kline to obtain Stewart's signature. Stewart signed the papers, and thereupon the Bank bought the note—a $300 note—for $200. At the time of the purchase Hayutin knew of the bankruptcy of Kline.

Stewart's counsel contends that the bank failed to prove that it is an innocent purchaser, a burden cast upon it by proof of the fact that there was no consideration for the note and that the note was obtained by fraud. C. L., § 3876. But there is evidence in the record to the effect that Kline represented to Hayutin that Joseph owned the automobile; that he (Kline) was Joseph's agent; that Hayutin (who knew that Kline had been adjudged a bankrupt) asked Kline, ''What are you doing now for a living''? to which question Kline answered, ''I am selling some cars on commission, and doing this, that and the other thing''; that the note was payable to the order of Joseph and bore his endorsement; that Kline brought in Joseph, and Hayutin talked to Joseph about the note and discounting it—why he was going to get so little for it ($200); that Hayutin told him that that was what he thought the value of the car was; that Kline urged Joseph to make the deal. Joseph denied some of this testimony;

but as part of his testimony was clearly false, the trial judge remarked, "I am frank to say I do not put much reliance in Mr. Joseph's testimony."

The court found that the bank was a bona fide owner of the note, having purchased it in due course. The evidence supports the finding.

2. But counsel says that a more potent reason why the bank should not recover is that the note was not a negotiable instrument. If the note was nonnegotiable, of course, the bank took it subject to the defense that was pleaded and proven.

The note contains this provision: "I do hereby authorize any attorney of any court of record, in term time or vacation, to enter my appearance therein at any time after the date hereof, waive all process and to confess judgment or judgments in favor of the legal holder hereof, against me alone or jointly with any other signers hereof, for the amounts then owing."

The argument is that the note provides for the confession of judgment at any time after its date; that this amounts to a provision for judgment before maturity (12 months after date) or default; that the time of payment, therefore, is uncertain, and that this uncertainty deprives the note of its negotiability.

Section 3818, C. L., provides that, to be negotiable, an instrument must be payable on demand, or "at a fixed or determinable future time." It will be observed that the note permits confession of judgment for "the amounts *then* owing." But counsel argues that "owing" does not mean "due"; that of the total amount owing by a person, part may be due and the rest may not become due for some considerable time. True, when a person gives his note for a certain amount, payable one year from its date, the principal is owing as soon as the note is given, but is not then due. *Hendricks v. Town of Julesburg,* 55 Colo. 59, 63, 132 Pac. 61. Ordinarily the two words are used with due regard to the distinction suggested above. However, people do not always consult

a dictionary just before using words. All of us—or, out of consideration for others, let me say many of us—are careless at times in selecting words to express our thoughts. In construing contracts, courts make due allowance for this human failing, and do not permit inapt expressions to defeat the evident intention of the parties. *Messenger v. German American Insurance Co.,* 47 Colo. 448, 107 Pac. 643; *Jewel Tea Co. v. Watkins,* 26 Colo. App. 494, 145 Pac. 719; *Tillitt v. Mann,* 104 Fed. 421. Thus, in the Messenger case, supra, we construed the word "adjoining" to mean "near," "close by," "neighboring," or "not far from." In *Hammond v. Mason & Hamlin Organ Co.,* 92 U. S. 724, 23 L. Ed. 767, the term "legal representatives" was held to include assignees. In *May v. Sloan,* 101 U. S. 231, 235, 25 L. Ed. 797, a contract provided that C shall not interfere with any bona fide trades made by A, so far as any of the mortgaged property is concerned, provided the trades have been carried out in good faith, and completed; and it was held that a sale was a trade within the meaning of the agreement. In *Fowler v. Hoffman,* 31 Mich. 215, mortgagors agreed to keep the property insured for the full amount "due." This was construed to mean the full amount secured by the mortgage, whether presently payable or not; the court, speaking through Mr. Justice Cooley, saying, "The word 'due' is often used in business transactions as synonymous with 'owing' or 'remaining unpaid.' "

In the present case the note was made payable "on or before twelve months after date, * * * to be paid in installments of $25 per month." The provision permitting judgment "for the amounts *then* owing" must have been intended to mean, and we hold that it does mean, for the installments then due. If "owing" is given the narrow construction contended for, the provision would entitle the holder to judgment by confession the very day the note was executed, for, under such construction, the entire principal would then be "owing." If the holder had sued on the note immediately upon its execu-

tion, and had made the contention now made by Stewart, can it be doubted that the court would have held the contention unsound and the action premature? The authority to confess judgment is construed strictly against the party in whose favor it is given. *Metropolitan State Bank v. McNutt,* 73 Colo. 291, 215 Pac. 151; *National Exchange Bank v. Wiley,* 195 U. S. 257, 266, 25 Sup. Ct. 70; *Smithman v. Gray,* 203 Mich. 317, 168 N. W. 998.

The note was a negotiable instrument, and the trial court was right in holding it to be such. It follows that the note was enforcible at the suit of the bank, a holder in due course.

The judgment is affirmed.

Mr. Chief Justice Whitford, Mr. Justice Moore and Mr. Justice Burke concur.